**FOR PUBLICATION** **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ANDREW DWYER, *et al.*, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiffs, | : | Civil Case No. 12-3146 (FSH) |
| v. | : | **OPINION AND ORDER** |
| CYNTHIA A. CAPPELL, *et al.*, | : | Date: June 26, 2013 |
| Defendants. | : | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiffs' motion for a preliminary injunction[1] and both parties' motions for summary judgment. Plaintiffs seek injunctive and declaratory relief under 42 U.S.C. § 1983 against Defendants who are members of the Committee on Attorney Advertising that is appointed by the New Jersey Supreme Court (hereinafter the "State Judiciary Committee"). Specifically, Plaintiff seeks to enjoin enforcement of the Committee's Attorney Advertising Guideline 3 ("Guideline 3"). The Court has reviewed the submissions of the parties and considered the motions on the papers in accordance with Fed. R. Civ. P. 78.

## I. Background

Plaintiffs are attorney Andrew Dwyer and his law firm The Dwyer Law Firm, L.L.C. The firm has had a live website since 2007, which has publicized quotations from judicial opinions concerning Plaintiffs' legal work. The quotes are as follows:

---

[1] Plaintiffs initially filed a motion for a temporary restraining order and a preliminary injunction; this Court denied the request for a temporary restraining order and set a full briefing schedule for the preliminary injunction motion. [Docket Nos. 3, 6.]

- "Mr. Dwyer is, I think, an exceptional lawyer, one of the most exceptional lawyers I've had the pleasure of appearing before me. He is tenacious, professional in his presentation to the Court, a bit too exuberant at times, certainly passionate about his position, but no one can fault his zeal and his loyalty to his client, and no one can question his intellect . . . ." Hon. Jose L. Fuentes, J.S.C., in an unpublished judicial opinion concerning a fee application made in an employment discrimination case brought under the New Jersey Law Against Discrimination.
- "The inescapable conclusion is . . . that plaintiffs achieved a spectacular result when the file was in the hands of Mr. Dwyer. . . . Mr. Dwyer was a fierce, if sometimes not disinterested advocate for his clients, and through an offensive and defensive motion practice and through other discovery methods molded the case to the point where it could be successfully resolved." Hon. William L. Wertheimer, J.S.C., in an unpublished judicial opinion concerning a fee application made in an employment discrimination case brought under the New Jersey Law Against Discrimination.
- "Based upon my observations of him in court there's no question in my mind that he is in the upper echelon of employment lawyers in this state . . ." Hon. Douglas H. Hurd, in an unpublished judicial opinion concerning a fee application under the New Jersey Conscientious Employee Protection Act.

In 2008, Judge Wertheimer wrote a letter to Plaintiffs expressing concerns about his quotation on Plaintiffs' website and asking that it be removed. Plaintiffs declined to take the quotation off the website. The Judge's concerns were then sent to the Committee on Attorney Advertising with a request that the Committee determine whether the use of judicial quotations should be permitted. In response, Plaintiffs submitted a brief to the Committee in June 2008 arguing that it would violate the First Amendment to ban such use of judicial quotations. In February 2009, the Committee published a Proposed Attorney Advertising Guideline, and after a comment period and approval by the New Jersey Supreme Court, Attorney Advertising Guideline 3 was adopted in 2012; it reads:

> Attorney Advertisements: Use of Quotations or Excerpts From Judicial Opinions About the Legal Abilities of an Attorney
> An Attorney or law firm may not include, on a website or other advertisement, a quotation or excerpt from a court opinion (oral or written) about the attorney's abilities or legal services. An attorney may, however, present the full text of opinions, including those that discuss the attorney's legal abilities, on a website or other advertisement.

The official comment to Guideline 3 by the New Jersey Supreme Court states:

> This Guideline arises from the review by the Committee on Attorney Advertising of an attorney's website that included two quotations from judges about the attorney's legal abilities. The quotations were from unpublished opinions of the judges on fee applications and the judges' names and titles were included in the advertisement.
>
> RPC 7.1(a) prohibits misleading statements. When a judge discusses an attorney's legal abilities in an opinion, such as in a fee-shifting or division-of-fee case, the judge is setting forth findings of fact and conclusions of law pertinent to the decision in the matter. The judge is not personally endorsing the attorney or making a public statement about the attorney for advertising purposes. In fact, judges are expressly prohibited from endorsing attorneys or providing testimonials regarding attorneys. The Committee finds that such quotations or excerpts, when taken out of the context of the judicial opinion and used by an attorney for the purpose of soliciting clients, are prohibited judicial endorsements or testimonials. As such, these quotations or excerpts from a judicial opinion in attorney advertising are inherently misleading in violation of RPC 7.1(a).

Plaintiffs filed the instant action on May 30, 2012, the day before Guideline 3 went into effect.

## II. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable

jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

## III. Discussion

The parties agree that the speech at issue in this case is commercial speech, which is protectable under the First Amendment if it is lawful and not misleading. There are no material facts in dispute. The core of the parties' dispute is the legal issue of whether Guideline 3 is most

appropriately characterized as a "restriction" on speech, or whether it instead is a regulatory requirement of "additional disclosure." This characterization affects the Court's analysis of the constitutionality of Guideline 3.[2] Plaintiffs characterize Guideline 3 as a ban on speech—specifically judicial quotations—while the State Judiciary Committee characterizes Guideline 3 as a regulation requiring additional disclosure—specifically a full judicial opinion—in order to provide context to a consumer about a judge's discussion of an attorney's legal abilities. (P. Br. at 30; D. Br. at 20; D. Opp. 2-3.) The Court agrees with the State Judiciary Committee that Guideline 3 is not a ban on speech but is instead a disclosure requirement, because it requires full disclosure of a judicial opinion. It allows publication of all the content sought to be published within a judicial quotation, albeit within its full context.

Because the Court finds that Guideline 3 is a disclosure requirement, to be constitutional it must pass the reasonableness test outlined in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985).[3] The Supreme Court in *Zauderer* explained

---

[2] Restrictions on speech are subject to intermediate scrutiny under the test outlined in *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980), while disclosure requirements are analyzed under the reasonableness test outlined in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985).

[3] The State Judiciary Committee makes two alternate arguments: it argues that an isolated judicial quote is inherently misleading and that Guideline 3 provides a disclosure requirement subject to analysis under *Zauderer*; in the alternative, it argues that even if the speech is characterized as potentially misleading, as distinguished from inherently misleading, it still passes scrutiny under *Central Hudson*. (D. Opp. 3-4.) The State's brief does not appear to correctly analyze the law in this area. Courts have held that regulations providing disclosure requirements—as opposed to bans on speech—are analyzed under *Zauderer*, regardless of whether the speech is inherently or potentially misleading. *See, e.g., Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 641 (6th Cir. 2010) (holding that "*Zauderer* applies where a disclosure requirement targets speech that is *inherently* misleading . . . [and] also controls our analysis where . . . the speech at issue is *potentially* misleading."); *Public Citizen Inc. v. Louisiana Attorney Discipline Bd.*, 632 F.3d 212, 218 (5th Cir. 2011) ("A regulation that restricts potentially misleading commercial speech will pass constitutional muster if the regulation directly advances a substantial government interest and is not more extensive than is necessary to serve that interest. A regulation that imposes a disclosure obligation on a potentially misleading form of

that "[b]ecause the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, appellant's constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal. . . . [U]njustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected speech[,] . . . [b]ut . . . an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Zauderer*, 471 U.S. at 651. The Supreme Court went on to explain that "[b]ecause the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed, we do not think it appropriate to strike down such requirements merely because other possible means by which the State might achieve its purposes can be hypothesized." *Id.* at 651 n.14. *See also Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 249-50 (2010) (applying the *Zauderer* reasonableness test to regulation that required disclosure to combat misleading commercial advertisements, specifically the promise of debt relief without any reference to the possibility of filing for bankruptcy which has inherent costs).

A judicial quotation's potential to mislead a consumer is self-evident.[4] Without the surrounding context of a full opinion, judicial quotations relating to an attorney's abilities could

---

advertising will survive First Amendment review if the required disclosure is reasonably related to the State's interest in preventing deception of consumers.") (citations omitted). However, even if the *Central Hudson* test were the correct test to apply, the regulation would still pass muster.

[4] States can justify regulations and show that the harms it seeks to avoid are real through surveys, "anecdotes, history, consensus, or simple common sense." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995); *Edenfield v. Fane*, 507 U.S. 761, 771 (1993). The Supreme Court has rejected the argument that concrete evidence or empirical data of deception is necessary where the deceptive nature of the speech at issue is obvious or self-evident. *See Milavetz,* 559 U.S. at 251 ("When the possibility of deception is as self-evident as it is in this case, we need not require the State to conduct a survey of the ... public before it [may] determine that the [advertisement] had a tendency to mislead.") (quoting *Zauderer*, 471 U.S. at 652-53). The State Judiciary

easily be misconstrued as improper judicial endorsement of an attorney, thereby threatening the integrity of the judicial system.[5]

The disclosure requirements of Guideline 3 are reasonably related to the state's interest in preventing the deception of consumers and preserving public confidence in the impartiality of the judiciary; moreover, Guideline 3's requirements are not unduly burdensome, as they simply require the full context surrounding a judge's evaluation of a lawyer.  This allows a consumer to have more complete information and prevents the perception of an improper judicial endorsement. States have a compelling interest in the practice of professions within their boundaries and can establish standards for licensing practitioners and regulating the practice of professionals; the state also has an interest in preventing the presentation of potentially misleading information to the public, particularly where potentially misleading information relates to a judge. *Ohralik v. Ohio State*, 436 U.S. 447, 460 (1978) (finding a strong state interest in maintaining standards among members of its licensed professions and an especially strong interest in regulating lawyers as they are essential to administering justice, and have historically been officers of the courts).

Therefore, Guideline 3 passes the *Zauderer* test and is constitutional as a matter of law.[6] Summary judgment is granted in favor of the State Judiciary Committee. Plaintiffs' motion for a preliminary injunction is denied as moot.

---

Committee argues that the misleading nature of the targeted speech is self-evident, and relies on common sense and the Commentary attached to Guideline 3 which finds that the speech at issue is inherently misleading because without context, it suggests judicial endorsement of an attorney.

[5] Plaintiffs analogize the speech at issue to client testimonials regarding an attorney's legal abilities, which Plaintiffs indicate are currently permitted under New Jersey law if accompanied by disclaimers.  However, client testimonials are distinguishable from the judicial quotations at issue here. Client testimonials are voluntary, but a judge's evaluation of an attorney's abilities in the context of attorney's fees, for example, is a necessary part of a court's determination. Also, client testimonials are not barred by ethics rules, while perceived judicial endorsements are improper.

## IV. Conclusion & Order

For the reasons stated above;

**IT IS** on this 26th day of June, 2013,

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendants' Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' Motion for a Preliminary Injunction is **DENIED AS MOOT**; and it is further

**ORDERED** that this case is **CLOSED**.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.

---

[6] Even if Guideline 3 were to be subjected to the intermediate scrutiny test outlined in *Central Hudson*, (which would apply only if Guideline 3 were deemed a restriction on speech), the regulation would still be constitutional. Guideline 3 directly advances a substantial governmental interest in preventing the perception of judicial impropriety that would result from consumers thinking that a judge endorsed an attorney, and it is no more extensive than necessary to serve that interest. *Central Hudson*, 447 U.S. at 566. The governmental interest and the harm that the State Judiciary Committee seeks to avoid are clear through common sense. *Milavetz*, 559 U.S. at 251 ("When the possibility of deception is as self-evident as it is in this case, we need not require the State to conduct a survey of the ... public before it [may] determine that the [advertisement] had a tendency to mislead.") (quoting *Zauderer*, 471 U.S. at 652-53). Requiring disclosure of a full judicial opinion, as Guideline 3 does, directly advances that governmental interest in a material way as it provides the full context of a judge's evaluation of an attorney's abilities and prevents a consumer from thinking that the judge was improperly endorsing the attorney. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995). This requirement is reasonable and appropriately proportional to the governmental interest; there is an appropriate and reasonable fit between the ends and the means. *See Went For It, Inc*., 515 U.S. at 632 ("What our decisions require, instead, is a fit between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but a means narrowly tailored to achieve the desired objective.") (citations omitted).